UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------- X
:
MARTIN J. WALSH, Secretary of Labor, United States : 21-CV-3094 (ARR)(TAM)
Department of Labor, :
: NOT FOR ELECTRONIC OR
Plaintiff, : PRINT PUBLICATION
:
-against- : OPINION & ORDER
:
COMMUNITY HEALTH CENTER OF RICHMOND, :
INC., a corporation and HENRY THOMPSON, individually :
and as a corporate officer, :
:
Defendants. :
:
------------------------------------------------------------------- X

ROSS, United States District Judge:

Defendants, Community Health Center of Richmond, Inc. ("Community Health Center") and Henry Thompson, move for partial dismissal of the complaint of plaintiff, Martin J. Walsh, Secretary of Labor (the "Secretary"), on the ground that claim preclusion bars the Secretary from seeking money damages to be paid to defendants' former employee, Qiana Nuñez. Defendants contend that Ms. Nuñez litigated similar claims to final judgment in a prior lawsuit, therefore the Secretary may not seek monetary relief payable to Ms. Nuñez in this action. I hold that claim preclusion does not apply to the Secretary's claim against defendants because the Secretary and Ms. Nuñez are not in privity, and I therefore deny the partial motion to dismiss.

## BACKGROUND

At the beginning of the COVID-19 pandemic, Qiana Nuñez worked for defendant Community Health Center, where she held the title of Executive Office Manager. Compl. ¶ 16,

1

ECF No. 1. Concerned about the potential spread of COVID-19 at Community Health Center's planned in-person executive leadership meeting on March 17, 2020, Ms. Nuñez sent an email to participants alerting them that the meeting would instead be held by teleconference. *Id.* ¶¶ 43, 50. When defendant Thompson instructed her to re-set the meeting as an in-person meeting, Ms. Nuñez did so, but told Thompson that she would not attend out of concern for her health. *See id.* ¶¶ 51–57. Two days later, Ms. Nuñez was suspended from her duties for "insubordination, confrontational and disruptive behavior, and refusal to participate in the . . . leadership meeting on Tuesday, March 17, 2020." *Id.* ¶ 62. On April 9, 2020, Ms. Nuñez received a letter informing her that Community Health Center was "exercising our employer right to terminate your at-will employment." *Id.* ¶¶ 71–72.

On May 7, 2020, Nuñez filed a complaint with the Occupational Safety and Health Administration ("OSHA") pursuant to Section 11(c) of the Occupational Safety and Health Act ("OSH Act"), 29 U.S.C. § 651, *et seq.*, alleging that defendants suspended and terminated her for making a complaint about unsafe conditions at the March 17, 2020 meeting, and for her refusal to attend. *Id.* ¶ 75. Section 11(c)(1) of the OSH Act provides that "[n]o person shall discharge or in any manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter . . . or because of the exercise by such employee on behalf of himself or others of any right afforded by this chapter." 29 U.S.C. § 660(c)(1). Section 11(c)(2) further provides that "[a]ny employee who believes that [she] has been discharged or otherwise discriminated against by any person" in violation of Section 11(c)(1) may "file a complaint with the Secretary [of Labor] alleging such discrimination." *Id.* § 660(c)(2). If the Secretary believes Section 11(c)(1) was violated, "[the

Secretary] shall bring an action in any appropriate United States district court against such person." *Id.* Only the Secretary may sue under Section 11(c)(2); there is no private right of action. *See Donovan v. Occupational Safety and Health Rev. Comm'n*, 713 F.2d 918, 926 (2d Cir. 1983) ("Under OSHA, employees do not have a private right of action." (citation omitted)); *see also Johnson v. Interstate Mgmt. Co., LLC*, 849 F.3d 1093, 1098 (D.C. Cir. 2017) (holding that "[t]he text of Section 11(c) specifically addresses who may sue," foreclosing suits by "private parties"); *Taylor v. Brighton Corp.*, 616 F.2d 256, 262 (6th Cir. 1980) (noting the legislative history of Section 11(c) "evidences a progressive narrowing of both the employee's right to a hearing on his claim … and his role in securing relief from the alleged violation").

On June 17, 2020, while the Secretary's Section 11(c) investigation was ongoing, Nuñez sued the same defendants—Community Health Center and Mr. Thompson—in federal court, asserting wage claims under the Fair Labor Standards Act and New York Labor Law and violations of New York Labor Law § 740. *See Nuñez v. Cmty. Health Ctr. of Richmond, Inc.*, No. 1:20-cv-03036 (E.D.N.Y.) (the "Prior Action"). N.Y.L.L. § 740 protects employee-whistleblowers from adverse employment action. The parties agree that a Section 740 claim requires the plaintiff to demonstrate that she reported an actual violation of the law, while Section 11(c) does not. *See* Defs.' Mem. Supp. Mot. to Dismiss 5 n.3, ECF No. 19-1 (hereinafter Defs.' Mem.); Pl.'s Opp'n Mot. to Dismiss 20, ECF No. 19-9 (hereinafter Opp'n). In her original complaint, Ms. Nuñez identified then-Governor Andrew Cuomo's March 16, 2020 COVID-related Executive Order as the law allegedly violated by defendants. Prior Action, Compl. ¶ 37, ECF No. 1. Plaintiff later amended her complaint to assert that the OSH Act's General Duty Clause, 29 U.S.C. § 654(a), was the law allegedly violated by defendants. Prior Action, Am. Compl. ¶ 70, ECF No. 15.

3

On October 9, 2020, defendants served a partial motion to dismiss the Prior Action. Prior Action, ECF No. 17. Defendants intended to argue that because Nuñez lacked a private right of action under the OSH Act, she could not predicate her state whistleblower claim on alleged OSH Act violations. *See* Prior Action, ECF No. 16, at 2.[1] Defendants argued that Nuñez's Section 740 claim was "an attempted end-run around the [OSHA] and the OSH Act's enforcement scheme" and that "the Secretary of Labor, through OSHA, alone enforces the OSH Act and determines whether a given scenario constitutes an OSH Act violation or retaliation." *Id.* On December 1, 2020, before the briefing was completed, the parties in the Prior Action filed a stipulation voluntarily dismissing Ms. Nuñez's Section 740 claim with prejudice. Prior Action, ECF No. 18. Ms. Nuñez and the defendants later settled the remaining FLSA and NYLL claims, and stipulated to a dismissal of the remaining claims with prejudice. *See* Prior Action, ECF Nos. 29, 34, 35.

On June 1, 2021, the Secretary commenced the instant action against defendants, alleging they violated Section 11(c) of the OSH Act and seeking front pay, back pay, compensatory, and punitive damages to be paid to Ms. Nuñez, an injunction preventing defendants from violating Section 11(c), posting of a notice that defendants will not discriminate against employees for engaging in protected activities, and expungement of references to Ms. Nuñez from personnel and company records. *See* Compl., Prayer for Relief.

---

[1] Defendants contend that I cannot consider their arguments in the Prior Action because their motion to dismiss was never filed. *See* Defs.' Reply Supp. Mot. to Dismiss 14 n.12, ECF No. 19-16 (hereinafter "Reply") (arguing that "[t]he brief is outside of the Complaint, not referenced or relied upon in the Complaint, and not in the public record, so it may not be considered on a motion to dismiss"). However, Defendants publicly filed a letter concerning their anticipated motion to dismiss, making similar arguments. *See* Prior Action, ECF No. 16. I therefore take judicial notice of the pre-motion letter.

4

Defendants now move to dismiss the Secretary's complaint to the extent that he seeks victim-specific relief for Ms. Nuñez, contending that under the doctrine of *res judicata*, the Secretary is precluded from seeking damages for Nuñez because her retaliation claim in the Prior Action was dismissed with prejudice. Defendants do not seek to dismiss the Secretary's claims insofar as they seek equitable relief. *See* Defs.' Mem. 1 ("Defendants do not dispute the Secretary's ability to maintain this action or to pursue injunctive relief.").

## LEGAL STANDARD

Under the doctrine of *res judicata*, also known as claim preclusion, "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Monahan v. N.Y.C. Dep't of Corrections*, 214 F.3d 275, 284 (2000) (quoting *Allen v. McCurry*, 449 U.S. 90, 94 (1980)). Accordingly, "[t]o prove the affirmative defense a party must show that (1) the previous action involved an adjudication on the merits; (2) the previous action involved the plaintiffs or those in privity with them; (3) the claims asserted in the subsequent action were, or could have been, raised in the prior action." *Id.* at 285 (citing *Allen*, 449 U.S. at 94). Claim preclusion "forecloses 'successive litigation of the very same claim, whether or not relitigation of the claim raises the same issues as the earlier suit.'" *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008) (citation omitted) (quotations omitted). The doctrine "protect[s] against the expense and vexation attending multiple lawsuits, conserve[s] judicial resources, and foster[s] reliance on judicial action by minimizing the possibility of inconsistent decisions." *Id.* (quotation omitted).

With respect to the first element, defendants argue that Ms. Nuñez's stipulation of dismissal with prejudice in the prior action is an "adjudication on the merits," and the Secretary does not

5

contest this argument. *See* Defs.' Mem. 9–10. *See generally* Opp'n. Ms. Nuñez's dismissal with prejudice in the Prior Action was a final judgment on the merits. *See Chase Manhattan Bank, N.A. v. Celotex Corp.*, 56 F.3d 343, 345 (2d Cir. 1995) ("A voluntary dismissal with prejudice is an adjudication on the merits for purposes of *res judicata*." (citation omitted)).

### 1. Privity

The parties contest whether the Secretary and Ms. Nuñez are in privity. The general rule of nonparty preclusion is that "[a] person who was not party to a suit generally has not had a full and fair opportunity to litigate the claims and issues settled in that suit. The application of claim and issue preclusion to nonparties thus runs up against the deep-rooted historic tradition that everyone should have his own day in court." *Taylor*, 553 U.S. at 892–93 (quotations and citation omitted). Accordingly, a nonparty may be bound by a final judgment in a prior action only if there is a relationship constituting "privity" between the parties. *See id.* at 894 n.8 ("The term 'privity' . . . has also come to be used more broadly, as a way to express the conclusion that nonparty preclusion is appropriate on any ground."). The Supreme Court identified six grounds where nonparty preclusion is appropriate:

- (1) Where the party agreed to be bound by the litigation of others;
- (2) Where there is a pre-existing "substantive legal relationship" between the person to be bound and a party to the judgment, such as "preceding and succeeding owners of property, bailee and bailor, and assignee and assignor";
- (3) Adequate representation of the nonparty by someone with the same interests who was a party to the first suit;

- (4) Assumption of control by a nonparty over the prior litigation such that they already had the opportunity to present proofs and argument, even though not a party;

- (5) The nonparty is the designated representative of a party to the prior adjudication (dubbed "re-litigation through a proxy"); and

- (6) A special statutory scheme, such as bankruptcy or probate proceedings, expressly forecloses successive litigation by non-litigants.

*See id.* at 893–95.

The Court in *Taylor* warned against finding privity through "diffuse balancing," explaining that approach was in tension with the "fundamental nature" of "the general rule that a litigant is not bound by a judgment to which she was not a party." *Id.* at 898.

Defendants argue that the Secretary's claim is barred by "representative claim preclusion," citing *Taylor*'s fifth exception to the rule against nonparty preclusion. *See* Defs.' Mem. 11 (citing *Taylor*, 553 U.S. at 895, 900); *see also* Reply 3 n.2 (averring that "adequate representation" is not at issue). With respect to this category of nonparty preclusion, the Court warned that "[w]e have never defined the showing required to establish that a nonparty to a prior adjudication has become a litigating agent for a party to the earlier case," that "courts should be cautious about finding preclusion on this basis" and that "principles of agency law" should apply. *Taylor*, 553 U.S. at 906 (citing 1 Restatement (Second) of Agency § 14, p. 60 (1957)). The Court also cited favorably to *Montana v. United States*, 404 U.S. 147 (1979), where the Court found sufficient control by the United States of a federal contractor's prior litigation against Montana to justify precluding the

7

federal government's subsequent claims. *Taylor*, 553 U.S. at 906 n.13. In that case, the United States:

> (1) required [the original suit] to be filed; (2) reviewed and approved the complaint; (3) paid the attorneys' fees and costs; (4) directed the appeal from State District Court . . . (5) appeared and submitted a brief as *amicus* in the Montana Supreme Court; (6) directed the filing of a notice of appeal to [the Supreme Court]; and (7) effectuated [the prior plaintiff's] abandonment of that appeal on advice of the Solicitor General.

440 U.S. at 155 (1979).

*2. Privity and the Statutory Scheme of the OSH Act*

The parties discuss the implications of a series of cases applying representative claim preclusion to statutory schemes under which the government may sue for monetary relief for an aggrieved employee. The Supreme Court's decision in *EEOC v. Waffle House*, 534 U.S. 279 (2002), involved the applicability of claim preclusion to claims brought by the Equal Employment Opportunity Commission under the Americans with Disabilities Act. In *Waffle House*, the employee whose underlying claim was advanced by the EEOC had signed an arbitration agreement and therefore could not bring his own ADA suit in federal court. *Id.* at 282–83. The Court held that the arbitration agreement did not preclude the EEOC from seeking victim-specific relief on behalf of the employee. *Id.* at 295.

The Supreme Court's reasoning relied on the ADA's statutory scheme. After an employee files an ADA complaint with the EEOC, the EEOC has exclusive jurisdiction over that claim for 180 days and, if the EEOC sues, "the employee has no independent cause of action." *Id.* at 291. The Court held that claim preclusion could not apply because the statutory framework "clearly makes the EEOC the master of its own case and confers on the agency the authority to evaluate

8

the strength of the public interest at stake." *Id.* The Court suggested that its analysis might differ if "the EEOC could prosecute its claim only with [employee] consent, or if its prayer for relief could be dictated by [the employee]," but "[a]bsent textual support for a contrary view, it is the public agency's province—not that of the court—to determine whether public resources should be committed to the recovery of victim-specific relief." *Id.* at 291–92. Speaking on agency enforcement discretion, the Court acknowledged that an action brought by the EEOC to benefit private individuals could also serve the public purposes of a statutory scheme. *Id.* at 295–96 ("[W]henever the EEOC chooses from among the many charges filed each year to bring an enforcement action in a particular case, the agency may be seeking to vindicate a public interest, not simply provide make-whole relief for the employee, even when it pursues entirely victim-specific relief. To hold otherwise would undermine the detailed enforcement scheme created by Congress . . . .").

However, the Court limited its holding, leaving as an "open question" whether and how "a settlement or arbitration judgment would affect the validity of the EEOC's claim or the character of relief the EEOC may seek." *Id.* at 297. The Court did not need to reach these issues because the employee for whom the EEOC sought relief had not arbitrated his claims, but noted that "[i]f, for example, [the employee] had failed to mitigate his damages, or had accepted a monetary settlement, any recovery by the EEOC would be limited accordingly," and that it "goes without saying that the courts can and should preclude double recovery by an individual." *Id.* (quotations and citations omitted).

In support of the proposition that an employee's prior suit could limit the recovery of a government agency, the Court in *Waffle House* cited *EEOC v. U.S. Steel Corp.*, 921 F.2d 489, 495

9

(3d Cir. 1990) (Alito, J.), which held that the EEOC could not seek victim-specific relief under the Age Discrimination in Employment Act for employees who had previously brought their claims to trial and lost. Relying on the "distinctive enforcement scheme of the ADEA," the Third Circuit held that "the EEOC has representative responsibilities when it initiates litigation to enforce an employee's rights." *Id.* at 494. The ADEA's "distinctive enforcement scheme" grants an aggrieved individual plaintiff a private right of action but terminates that right "upon the commencement of an action by the Equal Employment Opportunity Commission to enforce the right of such employee . . . ." *Id.* The *U.S. Steel* court concluded that Congress created this scheme because it "intended for the EEOC to serve as the individual's representative when it seeks to enforce that individual's rights." *Id.* at 495. Thus, the ADEA operated "as essentially a codification of the doctrine of representative claim preclusion" with respect to instances where either the private party or the EEOC litigated first. *Id.* Similarly, in *EEOC v. Harris Chernin, Inc.*, 10 F.3d 1286, 1291 (7th Cir. 1993), citing concerns of double recovery, the Seventh Circuit held that the EEOC could not seek monetary relief, but could continue to seek an injunction because that relief was in the "public interest" rather than the employee's "personal interest." Defendants urge that I follow the results in *Harris Chernin* and *U.S. Steel*, contending that these cases are identical to the facts of the instant action.

After *Waffle House*, courts have disagreed on what impact the doctrine of claim preclusion should have on enforcement actions brought by government agencies following litigation by private individuals. The inquiry consistently turns on whether the aggrieved individuals and government agency are "in privity." For instance, in *EEOC v. PEMCO Aeroplex, Inc.*, 383 F.3d 1280 (11th Cir. 2004), the Eleventh Circuit held that the EEOC, which sought injunctive and

10

monetary relief, was not in privity with 22 employees who had sued their employer for Title VII violations and lost at trial.² *See id.* at 1290 (finding that the EEOC did not "control" the prior proceedings because it did not require the prior suit to be filed, pay attorneys' fees, or direct any other part of the proceedings); *see also id.* at 1286–90 (finding that the prior plaintiffs were not in privity with the EEOC under the virtual representation approach rejected by the Supreme Court in *Taylor*). In contrast, in *Vines v. Univ. of La. at Monroe*, 398 F.3d 700 (5th Cir. 2005), the Fifth Circuit held that aggrieved employees who sued their employer for violations of the ADEA were precluded by the EEOC's unsuccessful prior action. *Id.* at 708 (citing *U.S. Steel* for the proposition that "the ADEA places the EEOC in privity with individuals for whom it seeks relief").

Other courts have based their decisions in part on whether a finding of claim preclusion would prevent "double recovery" or avoid giving prior litigants "two bites at the apple," even where the court finds the government was not a representative. For instance, the Northern District of Illinois held that the EEOC could pursue individual relief for employees who failed to timely file charges under the ADEA and were barred from bringing their own individual suits because the government and those employees were not in privity. *EEOC v. Sidley Austin Brown & Wood LLP*, 406 F. Supp. 2d 991, 994 (N.D. Ill. Dec. 2005). The court explained that "*Waffle House* makes clear that EEOC's ability to seek monetary relief on behalf of individuals is derived from

---

² The Secretary also relies on *Pemco* for the proposition that "[a] party's tactical maneuver to 'create preclusion' supports denial of the *res judicata* doctrine in a subsequent case." Opp'n 21 (quoting *Pemco*, 383 F.3d at 1288). However, this passage of *Pemco* discusses "tactical maneuver[ing]" as part of the "virtual representation" test for preclusion, which the Supreme Court rejected in *Taylor*. *See* 553 U.S. at 885. I therefore decline to decide that claim preclusion does not apply because of alleged "tactical maneuvering" by defendants.

11

its own statutory rights to advance the public's interest and is unrelated to any individual's right." *Id.* The Seventh Circuit affirmed this decision but reiterated that courts "can and should preclude double recovery by an individual." *EEOC v. Sidley Austin LLP*, 437 F.3d 695, 695 (7th Cir. 2006), *cert. denied*, 549 U.S. 815 (2006). Had the employees "sued and lost, the employer might have been able to interpose the judgment as a bar to the EEOC's obtaining money for [the employees], by virtue of the doctrine of collateral estoppel." *Id.* (citing *U.S. Steel*, 921 F.2d 489). This is true "[e]ven though . . . the EEOC is not in privity with the victims for whom it seeks relief," because "it does not follow that [the victims] must be permitted to take two bites from the same apple." *Id.* The concern that litigants would receive "two bites at the apple" also animated the Fifth Circuit's decision in *EEOC v. Jefferson Dental Clinics, PA*, 478 F.3d 690 (5th Cir. 2007), which found that the EEOC was in privity with aggrieved employees who had sued their employer for violations of Title VII and lost. The Fifth Circuit reasoned that "[t]he EEOC's public interest does not justify giving the plaintiffs two chances to receive make-whole relief. The Supreme Court in *Waffle House* stated that if the individual plaintiff 'had accepted a monetary settlement, any recovery by the EEOC would be limited accordingly,' and 'it goes without saying that the courts can and should preclude double recovery by an individual.'" *Id.* at 699 (quoting *Waffle House*, 534 U.S. at 296–97).

Defendants urge me to adopt the reasoning of *Donovan v. Diplomat Envelope Corp.*, 587 F. Supp. 1417 (E.D.N.Y. 1984), a pre-*Waffle House* case in this District brought under Section 11(c). The *Diplomat Envelope* court considered the issue preclusive effect of a state administrative law judge decision upon the Secretary's Section 11(c) claim. *Id.* at 1420. The ALJ determined that the employee in question was terminated for walking off the job. *Id.* The Secretary argued that he

12

was not bound by the state proceedings because he was a nonparty, but the court disagreed, finding that the "real party in interest in the instant action" was the employee. *Id.* Acknowledging the "ultimate aim" of the suit was "to create an atmosphere in which employees in general feel safe in making complaints regarding alleged OSHA violations," the court nonetheless found privity because the Secretary sought "to further this ultimate aim solely through the means of benefiting [the employee] personally." *Id.* Under these circumstances, the court believed it "wholly equitable" for preclusion to apply. *Id.* However, the opinion cites no law in its privity analysis. *See generally ibid. Diplomat Envelope*'s "equitable" approach is in tension with the Supreme Court's warning in *Taylor* to avoid finding privity through "diffuse balancing." 553 U.S. at 898. Because *Diplomat Envelope*'s reasoning does not align with more recent precedent, I decline to follow it.

More recently, the District of Idaho declined to apply claim preclusion to a Section 11(c)(2) claim against a school district although an administrative law judge had previously ruled against a teacher on related claims. *Acosta v. Idaho Falls Sch. Dist. No. 91*, 291 F. Supp. 3d 1162, 1165 (D. Idaho 2017). The court in *Idaho Falls* held that the teacher and the Secretary were not in privity despite the fact that the Secretary sought some relief that would flow directly to the teacher, reasoning that "[i]n pursuing public enforcement actions, administrative agencies generally act both as a representative of a specific aggrieved individual and to vindicate a broader public interest," meaning that "[a]ggrieved individuals therefore lack the required 'identity of interests' with government agencies." *Id.* at 1168. The *Idaho Falls* court determined that "the type of relief sought" should be of "significant emphasis," contrasting between claims for "highly individual" monetary relief and injunctive relief. *Id.* (collecting cases). The court found the Secretary was not in privity with the teacher, because the Secretary sought both equitable and monetary relief. *Id.*

13

## DISCUSSION

*Waffle House* and subsequent cases make clear that the extent to which an individual can litigate their own claims under the prevailing statutory scheme is critical to whether the government acts as their representative. In *U.S. Steel*, for instance, the Third Circuit relied on the distinctive statutory scheme of the ADEA, through which the federal government effectively usurps the private litigant, to hold that this scheme codifies representative claim preclusion. 921 F.2d at 494. The purpose of relief sought under the statutory scheme also bears on this analysis. The Court in *Waffle House* endorsed the use of the government's discretion to pursue victim-specific relief to further the ultimate goals of a statute. 534 U.S. at 295. *See also Scalia v. CE Security LLC*, No. 21-cv-57, 2021 WL 3774198, at *3 (E.D.N.Y. Aug. 25, 2021) (holding that the Secretary "may still have interests independent of the aggrieved employee when seeking employee-specific relief" under the FLSA (quoting *Walsh v. Ariz. Logistics*, 998 F.3d 393, 396 (9th Cir. 2021)); *Idaho Falls*, 291 F. Supp. 3d at 1168 ("In pursuing public enforcement actions, administrative agencies generally act both as a representative of a specific aggrieved individual and to vindicate a broader public interest."). Also relevant to the privity inquiry is the concern that the government's litigation might create "double recovery" or "two bites at the apple" for a prior litigant. *See Sidley Austin*, 437 F.3d at 696 (holding no such concern existed where the preclusion would be due to "procedural forfeiture" by failure to timely file an ADEA claim).

1. *The Statutory Scheme of the OSH Act*

The parties draw opposite conclusions from the lack of a private right of action under the OSH Act and Section 11(c). Defendants argue that, because only the Secretary may sue for violations of the OSH Act, he necessarily becomes the employee's representative and therefore

14

may be bound by the employee's prior actions limiting her recovery. Defs.' Mem. 15–16. The Secretary argues that, because a Section 11(c) claim and the relief sought are solely in his discretion, he cannot be bound by the action of someone who did not have the power to bring a case in the first place. Opp'n 7–12. Further, he argues that seeking private relief serves the public purposes of the OSH Act. *Id.* 10–12.

The statutory scheme and purposes of the OSH Act imply that an action for make-whole relief brought by the Secretary cannot be precluded under these circumstances. Unlike cases considering the ADEA, which allows the Secretary to take control of a private litigant's case, the Secretary's authority to bring Section 11(c) cases is exclusive—absent an error of law allowing such an action to proceed, no private litigant could successfully sue under the OSH Act's retaliation provision. The Secretary's enforcement authority under the OSH Act is closer to the EEOC's enforcement authority under the ADA, which grants the EEOC temporary exclusivity over a claim and "does not function simply as a vehicle for conducting litigation on behalf of private parties." *Waffle House*, 534 U.S. at 288 (quoting *Occidental Life Ins. Co. of Calif. v. EEOC*, 432 U.S. 355, 368 (1977)). Nor is employee consent required for the Secretary to bring a Section 11(c) claim. *See id.* at 291 (noting that the Court's analysis might change if the EEOC required employee consent to bring ADA claims). In other words, the Secretary is "master of [his] own case" under Section 11(c). *Id.*

Further, the purpose of the OSH Act is "to assure so far as possible every working man and woman in the Nation safe and healthful working conditions and to preserve our human resources." 29 U.S.C. § 651(b). To further these goals, "the statute envisions mandatory safety standards and establishes reporting, investigating and enforcement procedures," and "Section 11(c) operates in

15

tandem with these provisions" by encouraging reporting of violations and cooperation with OSHA investigations without fear of retaliation. *Donovan v. Square D Co.*, 709 F.2d 335, 337–38 (5th Cir. 1983); *see also* 29 C.F.R. § 1977.17 ("Enforcement of the provisions of section 11(c) is not only a matter of protecting rights of individual employees, but also of public interest.") Though damages may flow to Ms. Nuñez, Section 11(c) suits serve a greater public interest than her individual recovery. If the Secretary's ability to pursue monetary damages for alleged retaliation under the OSH Act could be waived by individual litigants (who cannot sue under Section 11(c)), a key component of the Act's enforcement scheme would be wrested from the Secretary's control. And to hold otherwise would require the Secretary to monitor employment-related litigation, including cases unfolding in state court, in order to ensure litigants do not bring potentially preclusive claims. Because the Secretary has exclusive authority to bring OSH Act retaliation cases and Section 11(c) furthers the OSH Act's purposes, and absent textual support for the opposite view, I do not believe the OSH Act makes the Secretary Ms. Nuñez's representative in this action.

### 2. Double Recovery

The parties also dispute whether a finding of claim preclusion would serve to prevent double recovery by Ms. Nuñez. Defendants argue that by agreeing to dismiss her state law retaliation claims with prejudice, Nuñez capped her damages for retaliatory discharge at $0, and affording the Secretary the chance to seek make-whole relief on her behalf gives her "two bites at the apple." *See* Reply 11–12. The Secretary argues that the concern of double recovery is not presented by the facts of this case. Opp'n 18.

I do not believe that the concern about double recovery is strong enough to justify precluding the Secretary's claims, especially because Ms. Nuñez stipulated to dismissal of her

claims early in the Prior Action and lacked a private right of action under Section 11(c). *Compare Jefferson Dental*, 478 F.3d at 693 (prior action went to trial and employees lost) *and EEOC v. JBS USA, LLC*, 8:10CV318, 2016 WL 4435198 (D. Neb. Aug. 19, 2016) (employees' claims were dismissed by the court for failure to prosecute) *with Sidley Austin*, 437 F.3d at 696 (employees' claims would be procedurally barred for failure to timely file a claim with the EEOC). Further, the scenarios raising concerns of double recovery identified by the Supreme Court in *Waffle House* were failure to mitigate damages and prior settlement of the same claim, neither of which is relevant here. 534 U.S. at 296. The position now taken by defendants is also in tension with their pre-motion argument in the Prior Action that Ms. Nuñez was unable to base a retaliation claim on the OSH Act, and that "the Secretary of Labor, through OSHA, alone enforces the OSH Act and determines whether a given scenario constitutes an OSH Act violation or retaliation." Prior Action, ECF No. 16, at 2. The defendants argued in the Prior Action that the OSH Act barred Ms. Nuñez's recovery because the Secretary has control over OSH Act enforcement, but now argue that the Secretary should be precluded from seeking damages to enforce the OSH Act because Ms. Nuñez tied her retaliation claim to the Act in the Prior Action.

3. *Agency*

I am also mindful of *Taylor*'s instruction to consider principles of agency law in determining whether the Secretary is acting as Ms. Nuñez's proxy. In general, for the purposes of claim preclusion an agency relationship exists where "the agent's conduct of the suit is subject to the control of the party who is bound by the prior adjudication." *Taylor*, 553 U.S. at 906. There is no suggestion in the record that Ms. Nuñez controls the Secretary with respect to this action, nor does the OSH Act give her the right to do so. The regulations implementing Section 11(c) state

17

that "[t]he Secretary's jurisdiction cannot be foreclosed as a matter of law by unilateral action of the employee" and disclaim any effect of an employee withdrawing their OSHA complaint upon the Secretary's enforcement powers. 29 C.F.R. § 1977.17. Ms. Nuñez has done no more than file an OSHA complaint and share certain documents with the Secretary, *see* Reply at 14 n.12, neither of which is sufficient for defendants to carry their burden of proof to demonstrate that she has control over the Secretary's conduct of this action. Nor did the Secretary control Ms. Nuñez's original suit. *Compare Montana v. U.S.*, 440 U.S. at 155 (discussing the government's extensive control over prior action).

    4. *Purposes of Res Judicata*

Finally, I do not believe that the goals advanced by the doctrine of *res judicata* are impeded by my allowing the Secretary to pursue victim-specific relief. Since only the Secretary may bring a Section 11(c) claim, my ruling is unlikely to unleash a flood of suits that would create double recovery for employees or introduce a risk of inconsistent judgments to OSH Act litigation. Moreover, there is no risk of duplicative litigation in the instant case—defendants agree that the Secretary is entitled to pursue injunctive relief for their alleged violations of the OSH Act, and this litigation will continue even if I rule that claim preclusion bars the Secretary's claims for victim-specific relief. For the same reason, a finding of claim preclusion would not preserve judicial economy.

Because I rule that the Secretary and Ms. Nuñez are not in privity, I do not need to discuss the question of whether the claims advanced by the Secretary in this action were, or could have been, raised in the Prior Action.

18

## CONCLUSION

In light of the above, defendants' partial motion to dismiss is hereby denied.

SO ORDERED.

_____/s/_____

Allyne R. Ross

United States District Judge

Dated:        September 28, 2022

        Brooklyn, New York